IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                        Criminal No. 15-214 MV

GERALD VIARRIAL,

    Defendant.

## MOTION TO SUPPRESS STATEMENTS AND EVIDENCE AND MEMORANDUM IN SUPPORT (SECOND MOTION)

    The Defendant, GERALD VIARRIAL, by and through his attorney, Todd B. Hotchkiss, and hereby moves this Court, pursuant to Fed.R.Crim.P. 12(b)(3) and the Fourth and Fifth Amendments, for an Order suppressing the following statements and evidence as inadmissible at trial:

    1. Any and all statements by Mr. Viarrial on March 28, 2014 made after arrest in violation of Mr. Viarrial's constitutional rights under the Fourth and Fifth Amendments to the United States Constitution.

    2. Any and all other evidence, tangible or intangible, including statements by Mr. Viarrial and evidence located in Mr. Viarrial's residence, resulting from and seized directly or indirectly pursuant to any and all government violations of due

process of law or illegal seizures from Mr. Viarrial on March 28, 2014 in violation of Mr. Viarrial's constitutional rights under the Fourth and Fifth Amendments to the United States Constitution.

3. Any and all statements by Mr. Viarrial on March 31, 2014 made after arrest in violation of Mr. Viarrial's constitutional rights under the Fourth and Fifth Amendments to the United States Constitution.

4. Any and all other evidence, tangible or intangible, including statements by Mr. Viarrial and evidence located in Mr. Viarrial's residence, resulting from and seized directly or indirectly pursuant to any and all government violations of due process of law or illegal seizures from Mr. Viarrial on March 31, 2014 in violation of Mr. Viarrial's constitutional rights under the Fourth and Fifth Amendments to the United States Constitution.

As grounds for this motion, defense counsel states the following alleged facts contained in the discovery received thus far by counsel:

1. On March 28, 2014, Mr. Viarrial was arrested by Pueblo of Pojoaque Tribal Police Department (PTPD) officers for an incident allegedly involving his children. Mr. Viarrial was taken into custody and transported to the PTPD station. The discovery indicates that Mr. Viarrial was informed of his <u>Miranda</u> rights, but the discovery does not indicate what

was said. The discovery asserts that Mr. Viarrial agreed to cooperate with police.

2. PTPD officers then asked Mr. Viarrial if he would agree to consent to searches of his residences and vehicles at those residences. The discovery indicates Mr. Viarrial agreed to allow PTPD officers to search his property for any firearms or contraband. The discovery alleges that Mr. Viarrial then signed two written consent to search forms.

3. Mr. Viarrial on March 28, 2014 was then transported to his trailer residence, which was searched and nothing incriminating was found.

4. Mr. Viarrial on March 28, 2014 was then being transported to his second residence by PTPD Officer Jon Lopez. During that transport, without alleging how it happened, Mr. Viarrial made statements to Lopez allegedly admitting his god mother's "45" was in a safe in a heater box and that a pot pipe was in the coffee table in the living room.

5. Upon arrival at Mr. Viarrial's second residence, Lopez informed other PTPD officers of what Mr. Viarrial allegedly said to him during transport. PTPD officers then searched the second residence and found a heater box which contained a safe in the living room and a metal pipe was found with burnt marijuana in the coffee table.

6. Mr. Viarrial, according to the discovery, got between a PTPD officer and the heater box, and stated that the safe contained religious items and they could not touch them. PTPD took custody of the safe.

7. On March 31, 2014, the discovery asserts that Mr. Viarrial was transported to PTPD headquarters for an arraignment on pending tribal court charges. While there waiting his court appearance, the discovery asserts that Mr. Viarrial asked to be able to speak with PTPD Lt. Johnson. Lt. Johnson went to the PTPD holding area and greeted Mr. Viarrial. The discovery alleges that Mr. Viarrial started talking to Lt. Johnson on his own and Johnson allegedly did not ask Mr. Viarrial any questions relating to the investigation. Mr. Viarrial allegedly told Lt. Johnson that his boys were doing this to him because he caught them ditching school. Mr. Viarrial also allegedly said that he would allow PTPD officers to open the box that they had taken from his house during the March 28, 2014 search, and that there were guns in the box that belonged to Wanda Quintana. Johnson told Mr. Viarrial PTPD was getting a search warrant for the box.

8. When PTPD requested consent of Mr. Viarrial on March 28,

2014 to speak with him and to search his residences and effects for firearms and contraband were each involuntary, without proper Miranda warnings, and a reasonable person would not have believed that he could not have avoided complying, and therefore violative of Mr. Viarrial's constitutional rights under the Fourth and Fifth Amendments to the U.S. Constitution.

9. The statements made on March 31, 2014 were without Miranda warnings and resulted in the prejudicial statements allegedly by Mr. Viarrial to PTPD Lt. Johnson, and were violative of Mr. Viarrial's constitutional rights under the Fourth and Fifth Amendments to the U.S. Constitution.

10. Any evidence subsequently seized, directly or indirectly resulting from Mr. Viarrial's statements on March 28 or 31, is fruit of the poisonous tree and violated Mr. Viarrial's constitutional rights under the Fourth and Fifth Amendments to the U.S. Constitution.

11. Defense counsel presumes opposing counsel Assistant United States Attorneys Kyle Nayback and Novaline Wilson oppose this motion.

**MEMORANDUM OF LAW**

**1. Mr. Viarrial Did Not Voluntarily Consent to Searches or to Speak with Police.**

The Fourth Amendment requires that a consent "not be coerced, by explicit or implicit means", and "no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed." Schneckloth v. Bustamonte, 412 U.S. 218, 228, 93 S.Ct. 2041, 2048 (1973). This Court must adhere "to the rule that constitutional provisions for the security of person and property should be liberally construed" and it is "the duty of courts to be watchful for the constitutional rights of the citizen and against any stealthy encroachments thereon." Id. at 228-29, 93 S.Ct. at 2048 (quoting Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 535).

The U.S. Court of Appeals for the Tenth Circuit employs the following test to determine whether a consensual, warrantless action is constitutional:

> 1) There must be clear and positive testimony that consent was "unequivocal and specific" and "freely and intelligently" given; and
>
> 2) the government must prove consent was given without duress or coercion, express or implied.

<pre>                    United States v. Price 925 F.2d 1268,
                    1270-71 (10th Cir. 1991).
</pre>

The government has the burden of showing a valid consensual encounter. United States v. Recalde, 761 F.2d 1448, 1453 (10th Cir. 1985).

Mr. Viarrial was under arrest, in custody at the PTPD station, and was not free to decline or terminate the encounter. *See* United States v. Lopez, 777 F.2d 543, 549 (10th Cir. 1985).

Mr. Viarrial at PTPD was out of the public view and in a private, secure place. Also, "interaction in a nonpublic place or small enclosed place" and "absence of other members of the public" are each additional factors this Court should consider whether a reasonable person would not have felt free to terminate the encounter or not comply with the officer's requests. *See* U.S. v. Little, 60 F.3d 708, 713, 712 & 714 (10th Cir. 1995).

The discovery is very light on the conduct of the PTPD officers.

Mr. Viarrial's Fourth and Fifth Amendment rights under the U.S. Constitution were violated.

**2. The Government Must Meet Its Burden to Show Any Incriminating Statements by Mr. Viarrial were Voluntarily Made and the Statements by Mr. Viarrial were Not Voluntarily Made.**

The government has the burden to show that the alleged incriminating statements allegedly made by Mr. Viarrial were voluntarily made by Mr. Viarrial. Colorado v. Connelly, 479 U.S. 157

(1986); Lego v. Twomey, 404 U.S. 477 (1972).

Mr. Viarrial has the right to a hearing outside the presence of the jury for this Court to make a preliminary fact determination that Mr. Viarrial voluntarily made the March 28, 2014 and March 31, 2014 statements. Jackson v. Denno, 378 U.S. 368 (1964); 18 U.S.C. § 3501(a).

The requirement that statements be voluntary is drawn both from the right against self-incrimination and the standards of due process of law, each under the Fifth Amendment to the United States Constitution. Oregon v. Elstad, 470 U.S. 298, 304 (1985). Involuntary statements are inherently untrustworthy, and their use violates our fundamental sense of decency. Spano v. New York, 360 U.S. 315, 320 (1959). "A statement is involuntary if it is extracted by any sort of threats or violence [or] obtained by a direct or implied promises, however slight, [or] by the exertion of any improper influence." United States v. Bautista-Avila, 6 F.3d 1360, 1364 (9th Cir. 1993)(quoting United States v. Guerrero, 84 F.2d at 1366)(quoting Hutto v. Ross, 429 U.S. 28, 30 (1976))(quoting Bram v. United States, 168 U.S. 532, 542-43 (1897)).

### 3. The Fruit of the Poisonous Tree Doctrine Requires Suppression of All Fruit, Including Any Subsequent Statements by Mr. Viarrial and the Seizure of the Safe.

"The test is whether the evidence has been obtained by 'exploitation' of the unlawful conduct or has been obtained by other

means 'sufficiently distinguishable to be purged of the primary taint.'" Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 416 (1963); Brown v. Illinois, 422 U.S. 590, 602, 95 S.Ct. 2254, 2261 (1975).

The question is "whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." U.S. v. Olivares-Rangel, 458 F.3d 1104, 1119 (10th Cir. 2006)(quoting United States v. King, 990 F.2d 1552, 1563 (10th Cir. 1993)(quoting Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407 (1963)).

As a result of statements made by Mr. Viarrial, PTPD officers searched his second residence on March 28, 2014 and seized a safe and a pot pipe. The "'fruit of poison tree' doctrine excludes evidence obtained in reliance upon an illegal search. *See* Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939)(establishing the doctrine)." United States v. Smith, 413 F.3d 1253, 1278 (10th Cir. 2007); United States v. Maez, 872 F.2d 1444, 1456-57 (10th Cir. 1989); United States v. Carson, 793 F.2d 1141 (10th Cir. 1986). The United States sought and executed a search warrant on the safe which government agents had seized from Mr. Viarrial's residence. After unconstitutionally searching the safe with the warrant, thereafter, agents exploited the illegality and used

9

information from the firearms found therein to conduct an investigation of Mr. Viarrial. That subsequent investigation based on the four firearms was fruit of the poisoned tree, and all such evidence from the investigation, must be suppressed as fruit of the poisonousness tree. *See* Simpson v. United States, 346 F.2d 291, 294 (10th Cir. 1965).

Any fruit of the poisoned search, including any and all subsequent investigation into the firearms and ammunition found inside the safe, is poisoned and tainted without any purging of the taint, and should be suppressed under the Fourth and Fifth Amendments to the U.S. Constitution.

WHEREFORE, the Defendant GERALD VIARRIAL respectfully requests this Court for an Order excluding any and all evidence as inadmissible at trial for any and all of the foregoing reasons. Mr. Viarrial also requests any and all further relief which this Court deems appropriate under the circumstances.

**REQUEST FOR HEARING**

The Defendant, GERALD VIARRIAL, hereby requests a hearing at which to adduce testimony and law in support of his motion to suppress and accompanying memorandum in support thereof.

Respectfully submitted,

*/s/ Todd B. Hotchkiss*
TODD B. HOTCHKISS
ATTORNEY AT LAW, LLC
Attorney for GERALD VIARRIAL
610 Gold Avenue S.W., Suite 228
Albuquerque, New Mexico 87102
Tele. (505) 243-6776
E-mail: Todd@toddhotchkisslaw.com

**CERTIFICATE OF SERVICE**

I, Todd B. Hotchkiss, hereby certify that on June 29, 2015 I electronically filed the foregoing document through the CM/ECF system and that through that system opposing counsel Kyle Nayback and Novaline Wilson, Assistant United States Attorneys, will be served with a true and accurate copy.

*/s/ Todd B. Hotchkiss*
TODD B. HOTCHKISS